IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT REICHLEY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO.   22-cv-780 |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                                         **January 12, 2023**

Plaintiff Scott Reichley brought this action seeking review of the Acting Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) under Title II of the Social Security Act, 42 U.S.C. §§ 401–433.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **DENIED**.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed for SSDI, alleging disability since May 1, 2017, due to cognitive dysfunction, anxiety, bipolar disorder and traumatic brain injury (TBI).  (R. 416). Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 179-87).  Plaintiff, represented by counsel, and a vocational expert (VE) testified at a July 21, 2020, administrative hearing.  (R. 70-109).  On August 4, 2020, the ALJ issued a decision unfavorable to Plaintiff. (R. 146-69).  Plaintiff appealed the ALJ's decision, and on February 23, 2021, the Appeals

Council remanded the case for the ALJ to address an error[1] at Step 3 of the sequential evaluation process. (R. 170-75). On July 21, 2021, the ALJ held a second administrative hearing, at which, Plaintiff, represented by counsel, and a VE again testified. (R. 38-69). On July 16, 2021, the ALJ issued another decision unfavorable to Plaintiff. (R. 11-37). Plaintiff appealed, and the Appeals Council denied Plaintiff's request for review on January 10, 2022, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (R. 1-7).

On March 3, 2022, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania. (Compl., ECF No. 1). On May 4, 2022, Plaintiff was deemed to have consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent Order, ECF No. 5). On July 7, 2022, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review. (Pl.'s Br., ECF No. 8). On August 8, 2022, the Commissioner filed a Response. (Resp., ECF No. 9).

## II.   FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff graduated from college. (R. 417). Plaintiff previously worked as an education director, fund raising director, a sales recruiter, an insurance agent and the vice president of a private school. (R. 418).

### A.   Medical Evidence[2]

---

[1] This error is not at issue in the instant proceeding.

[2] Plaintiff's Request for Review focuses on the ALJ's findings regarding his auditory limitations. Accordingly, the Court does not recite the evidence regarding his other conditions, except where otherwise relevant to his challenge to the ALJ's decision.

On April 29, 2019, consultative examiner Ziba Monfared, M.D., conducted an Internal Medicine Examination of Plaintiff.  He noted that Plaintiff was deaf in his left ear after being hit by a truck in 1999, but that Plaintiff used no assistive devices.  (R. 805).  Plaintiff's activities of daily living (ADLs) included driving his son to school, listening to the radio and socializing with friends.  (R. 806).  Dr. Monfared observed: "The claimant had difficulty to understand normal conversational speech during the exam.  I had to repeat several times and talk slow directly at his face to understand my sentences."  (R. 807).  Dr. Monfared diagnosed Plaintiff with "diminished hearing on the left side."  (R. 808).  In an attached form, Dr. Monfared checked a box indicating that Plaintiff does not retain the ability to hear and understand simple oral instructions or to communicate simple information, however, he checked another box indicating that Plaintiff can communicate by telephone.  (R. 812).  He also checked a column in a chart indicating that Plaintiff can tolerate "moderate" noise.  (R. 813).

On May 20, 2019, Dr. Monfared performed an Otolaryngological Examination on Plaintiff.  He recorded that Plaintiff did not use a hearing aid in his left ear due to nerve damage in that ear.  (R. 832).  He further noted that Plaintiff had normal voice quality.  (R. 833).  In his qualitative assessment of Plaintiff's hearing, he wrote: "Hears normal conversation without difficulty.  He passed finger rub, and forced whisper test."  (*Id.*).  Plaintiff's audiogram results were: "Severe to profound sensorineural hearing loss on the left.  On the right side there was mild sensorineural hearing loss with excellent discrimination of speech on the right with poor discrimination of speech on the left."  (R. 834).  In an attached form, Dr. Monfared again checked boxes indicating that Plaintiff does not retain the ability to hear and understand simple oral instructions or to communicate simple information, that Plaintiff can communicate by telephone, and that Plaintiff can tolerate moderate noise.  (R. 838-39).

In an Audiological Test Form also dated May 20, 2019, audiologist Jill Hoffman checked

three boxes with the following descriptions: "Normal – Ability to understand speech," "Mild – No significant difficulty with faint speech" and "Profound – May not understand even amplified speech."[3]  (R. 842).  Under "Speech Results," she recorded that Plaintiff had one-hundred percent word discrimination on the right side, but that word discrimination could not be tested on the left side due to no "SRT [speech recognition threshold]."  (*Id.*).  Ms. Hoffman left blank all boxes indicating different types of left- and right-sided hearing aids.  (*Id.*).

On June 4, 2019, Stage agency physician Richard Surrusco, M.D., opined that Plaintiff should "[a]void even moderate exposure to noise" because of his "TBI, profound hearing loss on left." (R. 120-21).  Under "communicative limitations," he recorded that Plaintiff has "limited" hearing on the left but no speaking limitations.  (R. 120).  On August 27, 2019, State agency physician L. Antone Raymundo, M.D., made the same findings.  (R. 138-39).

      B.      **Non-Medical Evidence**

The record also contains non-medical evidence.  At the July 21, 2020 telephonic administrative hearing, Plaintiff testified that he spent much of his career in alternative education.  (R. 82-83).  He also tried working as an insurance agent, but the work environment was too noisy and he needs "a completely quiet place" to work.  (R. 88, 97).  He explained that he cannot hear in his left ear, which makes it difficult to understand people "[w]hen there's more than one person talking . . . ."  (R. 99).  He stated that he has a driver's license but that he does not drive often.[4]  (R. 79).  He also spends time socializing with friends.  (R. 95).

---

[3] Ms. Hoffman did not indicate which boxes applied to which side of Plaintiff's hearing, but based on the other record evidence, presumably the "normal/mild" boxes applied to his right side and the "profound" applied to his left.

[4] When asked if he has any difficulties driving, Plaintiff identified only problems relating to his vision.  (R. 80).

4

At the June 17, 2021 telephonic administrative hearing, Plaintiff testified that he has been deaf in his left ear since being struck by a semi-trailer truck in 1999. (R. 54). He wore an earpiece during the hearing and indicated that "it's the only way" that he would have been able to participate. (R. 55). He stated that he delivers for Door Dash but can only do so for "an hour or two" at a time before surrounding noises overwhelm him. (*Id.*). He elaborated: "I can't even believe I'm driving a car with people with all noises that are around me. And when no one's around me, I'm okay, I guess." (*Id.*). He explained that he struggled at the prior hearing because there was too much noise in his home and he was listening to the audio "on speaker" instead of through his earpiece. (*Id.*).

In an Adult Function Report dated March 30, 2019, Plaintiff indicated that his TBI "makes it difficult around too much noise or stimulation" and that he is "deaf in one ear." (R. 427, 432). He reported that his ADLs include driving, watching television, attending church most Sundays and sometimes shopping in person. (R. 430-31). He checked boxes indicating difficulties with, *inter alia*, hearing, talking and understanding. (R. 432). He also struggles with following spoken instructions because he "forget[s] them quickly." (R. 432). He did not check the box indicating that he has a hearing aid. (*Id.*).

On April 2, 2019, Plaintiff's mother, Kathryn Reichley, completed an Adult Third Party Function Report regarding Plaintiff. She recorded that "loss of hearing in one ear makes it difficult for him." (R. 436). She listed his ADLs as including talking to others and attending church. (R. 440). She also noted: "Scott has a difficult time when a lot of noise because of hearing loss, so he turns down a lot of social engagements." (*Id.*). Additionally, she wrote: "[H]e has become more isolated because [he] has trouble hearing in noises places and [it] causes anxiety." (R. 441). She also checked boxes indicating that Plaintiff has difficulties with, *inter*

5

*alia*, hearing, understanding and following instructions. (*Id.*). She did not check the box indicating that Plaintiff has a hearing aid. (R. 442).

### III. ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act on June 30, 2021.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2017 through his date last insured of June 30, 2021.

3. Through the date last insured, the claimant had the following severe impairments: sensorineural hearing loss on the left, neurocognitive difficulty secondary to a closed head injury, bipolar disorder, generalized anxiety disorder, attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), and residuals of substance use disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(a) except for moderate exposure to noise; occasional exposure to vibrations; and no exposure to hazards such as machinery and heights. He is restricted to perform simple, routine tasks; and make simple

|   |   |
|---|---|
|   | work-related decisions.  The claimant is limited to low stress work involving occasional changes in the work setting.  He can have no contact with the public, and occasional contact with supervisors and co-workers. |
| 6. | Through the date last insured, the claimant was unable to perform any past relevant work. |
| 7. | The claimant was born on February 4, 1969, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged onset date.  The claimant subsequently changed age category to closely approaching advanced age. |
| 8. | The claimant has at least a high school education. |
| 9. | Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. |
| 10. | Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. |
| 11. | The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2017, the alleged onset date, through June 30, 2021, the date last insured. |

(R. 14-32).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 32).

## IV. LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform her past work. If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.   DISCUSSION

In his request for review, Plaintiff raises a single claim:

> Substantial evidence does not support the ALJ's finding that Mr. Reichley, despite his hearing loss, can tolerate a moderate noise level, which, as per the Selected Characteristics of Occupations, consists of a noise level typically found in department or grocery stores. The ALJ's RFC determination is unsupported by substantial evidence because all three medical sources in the record who opined on Mr. Reichley's hearing loss found that, in a job setting, Mr. Reichley can tolerate a noise level no greater than that typically found in a library or private office.

(Pl.'s Br., ECF No. 8, at 1).

"The new regulatory scheme [applicable to claims filed on or after March 27, 2017] instructs that the ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources.'" *Cheryl F. v. Kijakazi*, No. 3:20-cv-16052, 2022 WL 17155681, at *10 (D.N.J. Nov. 22, 2022) (citing 20 C.F.R. § 404.1520c(a)). Under this new scheme, the ALJ must evaluate the persuasiveness of the opinion, whether from a treating source or not, pursuant to the five factors set forth in 20 C.F.R. § 404.1520c(c). *See Lawrence v. Comm'r of Soc. Sec.*, No. 3:21-cv-01239, 2022 WL 17093943, at *4 (M.D. Pa. Nov. 21, 2022)

("Rather than assigning weight to medical opinions, [an ALJ] will articulate how persuasive he or she finds the medical opinions.") (citations and quotations omitted).  Among these five factors, supportability and consistency are the "most important."  20 C.F.R. §§ 404.1520c(b)(2); *accord Lawrence*, 2022 WL 1709343, at *10.  "Therefore, [the ALJ] will explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision . . . ."  20 C.F.R. § 404.1520c(b)(2).

Further, RFC is "the most a [Plaintiff] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  To determine the RFC, the ALJ must base the assessment on "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *Id*.  The ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests."  *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981).

At the hearing level, Plaintiff's counsel attempted to demonstrate that an RFC for moderate noise tolerance conflicted with Plaintiff's auditory limitations, but, according to Plaintiff, "the ALJ seemed uninterested" due to Plaintiff's ability to participate in the telephonic hearing.  (Pl.'s Br., ECF No. 8, at 5-7).  Thus, the ALJ determined that Plaintiff has the RFC to tolerate "moderate exposure to noise," rejecting Drs. Surrusco's and Raymundo's contrary findings in the process, as well as Dr. Monfared's opinion insofar as it concluded that Plaintiff could not hear, understand, and communicate simple oral information and instructions.  (R. 19, 26-28; *see also* R. 155).  Based on this RFC, the VE identified three jobs available to Plaintiff in the national economy – garment bagger, inserter of paper goods and retail marker – all of which are coded as "moderate" noise exposure per the Dictionary of Occupational Titles (DOT), and

none of which entail instructions being repeated slowly, amplified, or given only when the employee is facing the speaker.[5] (R. 61-62, 66-67, 102-03). In light of the VE testimony, the ALJ determined that jobs exist in significant numbers in the national economy that Plaintiff could perform. (R. 31).

Plaintiff assigns three errors to the ALJ's treatment of the subject medical opinions. (Pl.'s Br., ECF No. 8, at 8). First, he points out that the ALJ's observation that he answered questions "normally" at the June 2021 hearing with "no need" for questions to be repeated or asked louder is not correct. (Pl.'s Br., ECF No. 8, at 9-10). Second, he argues that the ALJ's observation that a reprimand letter from Plaintiff's former employer made no reference to his hearing difficulties is irrelevant because: (a) the ALJ failed to develop the record to determine whether the letter's reference to Plaintiff reporting that the building was "not an appropriate work environment for him" was related to his auditory limitations; and (b) Plaintiff otherwise testified at the first hearing that his attempt to work as an insurance agent failed in part due to the "noisy" work environment, whereas he needed a "completely quiet place" to work. (*Id.* at 11). Third, Plaintiff contends that the ALJ was also speculating when she concluded that Plaintiff's telephonic progress notes with nurses – which tend to be short and limited to the topics of Plaintiff's pain medications and upcoming appointments – would have referenced his hearing difficulties if any had arisen in his discussions with the nurses. (*Id.*).

Plaintiff's arguments as to these three purported reasons of the ALJ for discounting the doctors' medical opinions are not without basis. He points to instances at the administrative

---

[5] The DOT is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002).

hearings, including two or three at the hearing preceding the operative June 2021 decision, when he had difficulty understanding what the ALJ or counsel had said to him. (*Id.* at 9-10 (citations omitted)). The Court also agrees that Plaintiff's reprimand letter and the referenced progress notes would not necessarily include information about any auditory difficulties. However, these were not the only reasons given by the ALJ for finding the medical opinions about his hearing less than fully persuasive.

In addition, the ALJ cited the results of Plaintiff's audiogram, which Dr. Monfared indicated showed profound hearing loss on the left but only mild hearing loss "with excellent discrimination of speech on the right." (R. 22 (citing R. 830-842)). Indeed, these exam results were the reason the ALJ accepted Dr. Monfared's opinion that Plaintiff could work in moderate noise and rejected only his additional proposed limitation that Plaintiff cannot hear, understand, and communicate simple oral information and instructions, as well as Drs. Surrusco's and Raymundo's opinions that Plaintiff could *not* tolerate moderate noise. (R. 27 (citing R. 830-842)). The ALJ also cited further evidence from Dr. Monfared, including a qualitative assessment that Plaintiff "hears normal conversation without difficulty;" additional exam results showing that he had "passed finger rub and force whisper test;" and findings that his voice quality was normal and that he could communicate via telephone (R.27 (quoting R. 833)).

The ALJ based her decision on other substantial evidence as well, aside from Dr. Monfared's findings. She noted that Plaintiff testified that he can drive an automobile, which necessarily requires him to "hear and respond to emergency vehicle sirens" and horns, without using any special devices. (R. 25 (citing R. 803-42)). The ALJ further observed that Plaintiff does not "utilize a hearing aid or other device" in the rest of his life,[6] yet "he can still effectively

---

[6] Plaintiff claims in his brief that during his hearings in this matter he "us[ed] an earpiece to amplify conversation and block other noise," but, as the Acting Commissioner responds,

12

communicate with others," including "socializ[ing] with a 'number of friends.'" (R. 25-26 (citing R. 45-60, 830-42)). Moreover, the ALJ explained:

> [H]e alleges that the left ear hearing loss is from an accident in 1999, and since that time he has shown to have a history of engaging in significant work activity. He testified that he worked with school-age children, presumably in noisy environments, indicating his left ear impairment did not cause totally disabling functional limitations.

(R. 27 (citing R. 45-60, 110-25)).

Thus, the ALJ cited several additional grounds for concluding that Plaintiff could tolerate moderate noise, as Dr. Monfared had concluded, but contrary to the conclusions of Drs. Surrusco and Raymundo. These grounds included the results of Plaintiff's audiogram and other tests, additional findings by Dr. Monfared, Plaintiff's ADLs (including driving and socializing), his lack of a hearing aid, and his prior work since his hearing loss, particularly his work in a likely loud environment with schoolchildren. In light of this substantial evidence, the ALJ was not required to credit Drs. Surrusco's and Raymundo's opinions that he could tolerate moderate noise or the portion of Dr. Monfared's opinion regarding Plaintiff's purported inability to hear, understand and communicate simple oral instructions and information. *See Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability . . . , our inquiry is not whether the ALJ could have reasonably made a different finding based on this record. Rather, we must review whether the ALJ's actual findings are supported by substantial record evidence."). Therefore, I deny the request to remand.

---

"there is nothing in the transcript to indicate this was anything other than a normal earpiece headset which is commonly used during phone calls." (Pl.'s Br., ECF No. 8, at 10; Resp., ECF No. 9, at 12; *see also* R. 55). It is undisputed that Plaintiff does not use a traditional hearing aid, although the record also indicates that a left-sided hearing aid would not help him due to nerve damage. (*See* R. 832, 842).

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge